IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM MATTHEW FAILES,

     **Plaintiff,**

     v.                            CASE NO.  22-3014-SAC

JAY SIMECKA, et al.,

     **Defendants.**

**MEMORANDUM AND ORDER TO SHOW CAUSE**

Plaintiff brings this pro se action under 42 U.S.C. § 1983.  The Court granted Plaintiff leave to proceed in forma pauperis.  Although Plaintiff is currently detained at the Shawnee County Jail in Topeka, Kansas, his claims arose during his detention at the Lyon County Jail in Emporia, Kansas ("LCJ").  On February 8, 2022, the Court entered a Memorandum and Order and Order to Show Cause (Doc. 9) ("MOSC") granting Plaintiff an opportunity to show cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC.  The Court screened Plaintiff's Amended Complaint (Doc. 22) and entered a Memorandum and Order (Doc. 24) ("M&O") directing the officials responsible for the operation of the LCJ to prepare a *Martinez* Report.  The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A."  (Doc. 24, at 4.)  The *Martinez* Report (Doc. 34) has now been filed and the Court will screen the Amended Complaint in light of the Report.  The Court's screening standards are set forth in the Court's MOSC.

**I.  Nature of the Matter Before the Court**

Plaintiff alleges in Count I of his Amended Complaint that he was denied his prescribed mental health medication while at the LCJ from November 30, 2021, until he was transferred on

February 9, 2022.   Plaintiff claims that he was denied his prescribed medication because Dr. Miller and the LCJ have a policy to disallow medication that is considered a sleep aid, even though Plaintiff was not prescribed the medication for sleep.  Plaintiff claims that Dr. Miller and Nurse Herrea failed to administer his prescribed medication.

Plaintiff also alleges that on February 4, 2022, he was assaulted with excessive force by Officer Espinoza while being escorted to his cell at the LCJ.  Plaintiff alleges that he was weak due to being Covid-positive, and was in quarantine at the LCJ.  Plaintiff alleges that as he was walking to his medical cell, CO Espinoza told Plaintiff not to talk to Nurse Herrea.  Plaintiff claims that Espinoza then ran toward Plaintiff, forcefully gripping Plaintiff's elbow and guiding Plaintiff toward his cell.  Plaintiff claims that as Plaintiff was entering the cell, Espinoza shoved Plaintiff "with great authority" into a downward spiral.  Plaintiff claims he was weak and sick with Covid, and the force caused him to hit the bed, toilet and floor of his medical cell.  Plaintiff's claims his injuries were documented by Nurse Herrea, but he did not receive medical care for his injuries.

Plaintiff alleges that he was interviewed regarding the incident, but the Police Report No. 22-0239, Plaintiff's affidavit, the video of the incident, and Plaintiff's desire to press charges, were never forwarded to the district attorney.  After Plaintiff was transferred to a different facility, Defendants Stump, Whitney, and Cope would not take Plaintiff's phone calls regarding the incident.

Plaintiff alleges due process violations and cruel and unusual punishment.   Plaintiff names as Defendants:  Jeff Cope, Lyon County Sheriff; Lue Miller, LCJ Doctor; Lyon County Sheriff's Department; (fnu) Herrea, LCJ Nurse; (fnu) Whitney, LCJ Captain; (fnu) Espinoza, CO at LCJ; and (fnu) Stump, LCJ Sergeant.

## II. Discussion

"[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component."  *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies).  To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."  *Id*. at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 990 (citation omitted).  The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation."  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay.  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted).  "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

The Supreme Court has insisted upon actual knowledge to satisfy the subjective component: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added).

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted).   Claims of mistreatment while in state pretrial confinement are not covered by the Fourth Amendment or the Eighth Amendment. *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019). They are assessed under the Fourteenth Amendment.  *Id.*

The Court held in *Kingsley* held that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473–74, 192 L. Ed. 2d 416 (2015); *see also Colbruno*, 928 F.3d at 1163 ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee.").

Regarding Plaintiff's medication, the *Martinez* Report states in relevant part that:

> Failes was booked into the Lyon County Detention Center on November 30, 2021 having been transferred from the Chase County Jail. [Amended Complaint, Doc. 22, ¶ B (1)]. Failes arrived with medication requiring Nurse Miller to review and approve the medication in conformance with the policies of the Lyon County Detention Center. [Herrera Declaration, ¶ 3].  Failes had been prescribed Lexapro for depression and Lisinopril for high blood pressure.  Both of those medications were approved and administered as prescribed until approximately December 1, 2021, when Failes requested that the Jail discontinue the Lexapro and decrease the dosage of the Lisinopril. Both requests were approved. [Herrera Declaration, ¶ 4].  In early December 2021, Failes was transported to the medical office of Dr. Brett Siegle for a previously scheduled appointment that was not kept because of the transfer from Chase County. [Herrera Declaration, ¶ 5].  Dr. Siegle is an independent physician in Council Grove, Kansas and

4

has no association with the Lyon County Corrections Center. [Herrera Declaration, P 6]. Dr. Siegle prescribed Trazadone, which is also used to treat depression, but often prescribed as a sleep aid and Cyclobenzaprine, which is a muscle relaxant. [Herrera Declaration, P 7]. Neither of these medications are approved for use in the Lyon County Detention Center because of previous experience with prisoners either misusing the medications or bartering them for use by other prisoners without the knowledge of the medical staff. [Herrera Declaration, P 8]. With regard to prisoner Failes' complaints of muscle pain, he was provided directions for muscle relaxing exercises and hot compress. On occasion, Failes was prescribed Tylenol. [Herrera Declaration, P 9]. Because Failes refused to take the prescribed Lexapro, the medical facility substituted Fluoxetine, which is also an anti-depressant. Beginning on or about January 10, 2022, Fluoxetine was administered on a daily basis until on or about January 23, 2022 when prisoner Failes reported that he did not want to take it any longer. [Herrera Declaration, P 10]. On or about January 30, 2022, Failes was transferred to the medical unit because of a positive Covid test and assigned to Med-8 cell which is across from the Nurses' Office. [Herrera Declaration, P 11]. Failes' approved medication continued even while in the medical unit until his transfer out of Lyon County. [Herrera Declaration, P 12]. Even though Failes' prescribed multi-vitamin was initially not approved, toward the later period of his incarceration it was provided to him. The original disapproval was based on the vitamin not being medically necessary. [Herrera Declaration, P 13]. Although Failes complained of weight loss, it was determined by routine weighing and body mass measurements that there was not a medical condition causing any weight loss but rather due to his diet during incarceration. [Herrera Declaration, P 14].

(Doc. 34, at 2–3, internal paragraphs omitted).

Regarding the alleged excessive force on February 4, 2022, the Report provides in relevant part that:

On the morning of February 4, 2022, shortly after Detention Officer Espinosa changed posts to the booking area of the Jail, he had an encounter with Failes beginning in the booking area. Failes was in the booking area speaking with Sergeant Mark Brinkman and then entered the main corridor to return to his cell. [Espinosa Declaration, P 1, 6, Bates No. LC00235]. Sergeant Brinkman realized that Failes was standing in the hallway leading to his cell yelling at the Nurse through the glass door of her office.

Brinkman entered the hall and told Failes several times that he was not allowed to speak to the Nurse in that manner and ordered him to return to his cell several times. [Espinosa Declaration, ¶ 1, 6, Bates No. LC00235]. Espinosa and Officer Siebenaler initially moved to assist Sergeant Brinkman, but it appeared that Failes was going to his cell so they returned to the booking area. [Espinosa Declaration, ¶ 1, 6, Bates No. LC00235]. Espinosa later realized that Failes had not closed his cell door and had reentered the corridor yelling at the nurse. [Espinosa Declaration, ¶ 1, 6, Bates No. LC00235]. Espinosa entered the corridor and Failes began yelling at him while Espinosa ordered Failes to return to his cell several times. [Espinosa Declaration, ¶ 1, 6, Bates No. LC00235]. Instead of following Espinosa's orders, Failes advanced on Espinosa yelling and waving his arms causing Espinosa sufficient concern to consider drawing his taser. [Espinosa Declaration, ¶ 1, 6, Bates No. LC00235]. As Failes reached Espinosa, Espinosa grabbed Failes by the left arm, turned him around and started walking him back toward the cell. [Espinosa Declaration, ¶ 1, 6, Bates No. LC00235]. Failes resisted being escorted back and continued to yell at Espinosa until they arrived at the cell door when Espinosa turned Failes forward and with his right hand on Failes back lightly pushed him into the cell. [Espinosa Declaration, ¶ 1, 6, Bates No. LC00235]. Failes took several steps into his cell and when he was approximately five to six feet away from Espinosa buckled his knees and fell to the cell floor claiming that his right arm was broken but later claimed it was just hurt. [Espinosa Declaration, ¶ 1, 6, Bates No. LC00235]. Espinosa returned to the booking area and Sergeant Brinkman and Officer Siebenaler escorted Nurse Damaris Herrera to Failes cell. [Espinosa Declaration, ¶ 1, 6, Bates No. LC00235]. Nurse Herrera examined Failes in his cell and he reported pain in the right shoulder but there was no dislocation noted. Failes was able to move arms and fingers and all sensations were intact and his radial pulse was noted. Herrera took Failes vital signs and they were all normal. Tylenol was prescribed for his complaints of pain. [Herrera Declaration, ¶ 15, 16].

(Doc. 34, at 4–5, internal paragraphs omitted).

The Court reviewed the videos of the incident, which captured the interaction in the hallway as well as inside Plaintiff's cell. The videos show that Espinosa pushed Plaintiff straight into his cell, not in a "downward spiral" as alleged. After the shove, Plaintiff was on his feet and took a few steps before crumpling to the floor, placing one foot upon the bed. Plaintiff appears

to make no other contact with the bed or toilet.  Plaintiff then rolls over and deliberately places himself face down on the middle of his cell floor.  Plaintiff then kicks off his shoe and takes his glasses off and places them next to his head.  Later he pushes his glasses even further away from his head.  At some point he gets up, apparently to push the call button, and then places himself back in his face-down position on his cell floor.  The video also shows medical arriving in his cell to evaluate him.

Plaintiff's complaint with the Sheriff's Office was investigated, which included a review of these same videos.  Based on the review, it was determined that Plaintiff did not report the information truthfully and that he had made a false police report.  Because Plaintiff was transferred back to the Morris County Jail from the LCJ, no charges were filed against Plaintiff. *See* Doc. 34, at 5–7.

In light of the *Martinez* Report and on further review of the Amended Complaint, the Court is considering dismissal of this matter for failure to state a claim on which relief can be granted.  Plaintiff has not alleged a sufficiently serious medical need and he has failed to show that any defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that they also drew the inference.  Plaintiff has also failed to meet the objective standard for an excessive force claim.  Plaintiff will be given an opportunity to respond to the *Martinez* Report and to show good cause why dismissal should not be entered.  Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

## III. Motion to Appoint Counsel

Plaintiff has filed a Motion for Appointment of Counsel (Doc. 39), stating that he is being held in segregation, he is competent but mentally disabled, he lacks legal knowledge, he believes

his case has merit, and he lacks resources to investigate the facts and present his claims.  The Court previously denied both of Plaintiff's requests for appointment of counsel and denies the current request for the same reasons set forth in the prior order.  *See* Doc. 9, at 7–8; Doc. 24, at 4.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **June 15, 2022,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (Doc. 39) is **denied.**

**IT IS SO ORDERED**.

**Dated May 19, 2022, in Topeka, Kansas.**

<u>**s/ Sam A. Crow**</u>
**Sam A. Crow**
**U.S. Senior District Judge**